Filed 3/30/26  P. v. Herrera CA2/2

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE LUIS HERRERA,<br><br>    Defendant and Appellant. | B341385<br><br>(Los Angeles County<br>Super. Ct. No. YA062484) |

APPEAL from an order of the Superior Court of Los Angeles County, Scott T. Millington, Judge.  Affirmed.

Heather J. Manolakas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Stephanie C. Brenan and Nancy Lii Ladner, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Jose Luis Herrera (defendant) appeals the trial court's order reimposing an upper term sentence during a resentencing hearing held pursuant to Penal Code[1] section 1172.75. He argues the trial court erred in using his "prior record" and the fact that his original upper term sentence was the result of a negotiated disposition as grounds for reimposing the upper term upon resentencing. Specifically, defendant argues the court could not use his prior convictions to impose the upper term because they were already used to enhance his sentence, and he points to a "split of authority as to whether a trial court can reimpose the upper term sentence based merely on the fact that a defendant previously received the upper term as part of a plea agreement." The People argue "there was no improper dual use of a single fact" because defendant's "record as a whole went far beyond the fact of the three prior serious felonies." The People also rely on section 1172.75, subdivision (d)(4) as "provid[ing] a specific exception to the rule that a defendant has a Sixth Amendment right to have a jury decide whether aggravating factors support an upper term sentence." We agree with the People and affirm.

### BACKGROUND[2]

In 2005, defendant was charged by information with assault with a deadly weapon, to wit, a knife (§ 245, subd. (a)(1);

---

[1]      Unless otherwise designated, all further statutory references are to the Penal Code.

[2]      Because the facts of the underlying offense are not relevant to the issues presented, we omit them. In short, "The defendant and the victim were married for six years, had been divorced for seven years. The defendant moved back in [with the victim] after

count 1); resisting a police officer (§ 69; count 2); criminal threats (§ 422; count 3); sodomy by force (§ 286, subd. (c)(2); count 4); and attempted criminal threats (§§ 422/664; count 5). Relevant here, it was also alleged defendant suffered four prior strike convictions pursuant to the "Three Strikes" law (§§ 1170.12, subds. (a)–(d), 667, subds. (b)–(i)), four prior prison terms (§ 667.5, subd. (b)) and four prior serious felony convictions (§ 667, subd. (a)(1)).

In 2006, after reaching a negotiated disposition, defendant pleaded no contest to assault with a deadly weapon (count 1) and sodomy by force (count 4). Counts 2, 3, and 5 were dismissed as a result of the plea. Defendant admitted one prior strike conviction, three prior serious felony convictions, and one prior prison term. Defendant was sentenced to an aggregate term of 34 years in state prison, comprised of the upper term of eight years in count 4, doubled to 16 years due to it being a second strike, and one-third the midterm, or one year, doubled to two years as a second strike in count 1; plus three 5-year serious felony enhancements and one 1-year prior prison term enhancement. Defendant's attorney stipulated to a factual basis for the plea.

In 2023, defendant was found eligible for resentencing pursuant to section 1172.75. Following a hearing in 2024, the

---

being paroled for a [section] 273.5, [against the same victim]. The defendant during this incident cut himself, his arm twice, said he'd kill himself. The defendant held the victim at knifepoint throughout the night. The defendant raped and sodomized [the victim] . . . . The defendant put the victim in the closet for 14 hours. The whole incident lasted 16 hours, . . . and the Torrance S.W.A.T. and crisis team had to respond to the incident."

court struck the one-year prison prior enhancement, declined to dismiss defendant's strike prior and his three 5-year serious felony enhancements, and reimposed the same sentence, including the upper term on count 4.

Defendant filed a timely notice of appeal.

## DISCUSSION
### The trial court did not err in reimposing an upper term sentence during resentencing pursuant to section 1172.75

Defendant contends the trial court erred in reimposing the upper term on count 4 because, under section 1170, subdivision (b)(3), the court could not use the same fact (defendant's record) to both aggravate and enhance his sentence.

Defendant argues the fact the original sentence resulted from a plea agreement and the upper term was originally imposed are not enough to support the court's reimposition of the upper term. Defendant points to the split of authority regarding whether the upper term may be reimposed when the original sentence was the result of the plea agreement. (Cf. *People v. Mitchell* (2022) 83 Cal.App.5th 1051, review granted Dec. 14, 2022, S277314 [defendant whose sentence is the result of a plea agreement is not entitled to retroactive relief under amended § 1170] & *People v. Todd* (2023) 88 Cal.App.5th 373, review granted Apr. 26, 2023, S279154 [where an upper term sentence was the result of a plea agreement defendant is still entitled to retroactive relief under § 1170, subd. (b)].) Defendant also points to a split of authority regarding whether section 1172.75, subdivision (d)(4) allows for reimposition of the upper term without the heightened factfinding requirements of section 1170, subdivision (b) when the upper term was imposed at the time

4

defendant was originally sentenced. (Cf. *People v. Brannon-Thompson* (2024) 104 Cal.App.5th 455 (*Brannon-Thompson*) [§ 1172.75, subd. (d)(4) created an exception to the heightened factfinding requirements of § 1170, subd. (b) when the upper term was originally imposed] & *People v. Gonzalez* (2024) 107 Cal.App.5th 312 (*Gonzalez*) [upper term may only be reimposed where any aggravating factors are found beyond a reasonable doubt or admitted by the defendant].)

### A.    *Relevant facts*

Ahead of resentencing, defendant's counsel filed a resentencing brief wherein he asked the court to strike the now-invalid one-year prior prison term enhancement, and use its discretion to strike the five-year serious felony enhancements, dismiss the prior strike conviction pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, and not impose an aggravated term pursuant to section 1170, subdivision (b). Counsel argued the court's new sentencing discretion, along with defendant's postconviction factors, militated in favor of a new sentence of 14 years.

The People filed a sentencing memorandum asking the court to "respect the intention of all parties at the time of the plea and sentencing" and not change defendant's sentence beyond striking the now-invalid one-year prison prior enhancement.

On September 16, 2024, the court held a resentencing hearing pursuant to section 1172.75. Defense counsel focused her oral argument on the request that the court strike the three 5-year serious felony enhancements pursuant to section 1385, subdivision (c)(3) and noted the court's discretion to also dismiss the prior strike. Defense counsel directed the court's attention to

defendant's postconviction factors demonstrating he had "engag[ed] in positive programming."

The People asked the court to only remove the now-invalid one-year prison prior, noted the "especially brutal and violent" nature of the commitment offense, and reiterated that defendant's original sentence was imposed pursuant to a plea agreement.

The victim attended the hearing and made a statement. The court noted "she appear[ed] . . . emotional" and was "shaking." The victim explained to the court her initial relief knowing defendant would be sentenced to life as a third striker and never be able to harm her again, but upon learning of the potential plea agreement, she agreed to the negotiated sentence—a determinate term of 34 years—because she thought by that time she would have moved out of state. She explained the ordeal she and her family had been through as a result of the offense, including losing her job. She said, "after counseling" she stopped having nightmares and thinking about defendant, but since the initiation of these resentencing proceedings she had "not slept." She asked the court to keep defendant's sentence intact.

The court understood its discretion to dismiss the prior strike conviction. The court noted the "very serious" and "egregious" nature of the crime, and defendant's use of a knife to carry it out. The court discussed defendant's prior strike conviction history, noting, though some of the convictions are old, each new offense was committed very soon after his release from prison; resulting in very little time out of custody.[3] The court

_____

[3]    In 1990, in case No. NA003240, defendant sustained a conviction for robbery, resulting in a four-year prison term. In

6

also looked at defendant's "overall [criminal] background," noting it began in 1987. Ultimately, the court found defendant fell "within [the spirit of] the Three Strikes law."

Turning to the discretion to strike the enhancements under section 1385, the court indicated it understood the duty to "afford great weight" to defendant's mitigation evidence, but "stress[ed]" the "exception" where "the court finds that dismissal of the enhancement would endanger public safety." As such, the court concluded "dismissal of the enhancement would result in physical injury or other serious danger to others," specifically the victim in this case.

Finally, the court reimposed the upper term sentence in count 4 finding, under section 1170, subdivision (b)(2), that defendant's criminal record was "an aggravating factor that supports the high term" and reiterated that defendant "is a danger to the community, [and] he's an extreme danger to [the victim]." Additionally, the court noted the sentence here was imposed pursuant to a plea agreement and pointed to a current split in authority regarding "whether the People are entitled to their bargain or not." Ultimately, the court struck the one-year section 667.5, subdivision (b) enhancement and kept the remainder of the sentence intact, resulting in a total sentence of 33 years.

---

1993, "shortly after he got out," defendant sustained a conviction in case No. NA014748 for two robbery counts and received an eight-year prison term. In 1998, defendant received another eight-year sentence for criminal threats and domestic violence. In 2005, shortly after his release, he committed the instant offense.

7

**B.    *Standard of review***

We review the trial court's sentencing decision pursuant to section 1172.75 for abuse of discretion and "'"ask whether the trial court's findings of fact are supported by substantial evidence, whether its rulings of law are correct, and whether its application of the law to the facts was neither arbitrary nor capricious."'" (*People v. Garcia* (2024) 101 Cal.App.5th 848, 857.)

We review issues of statutory interpretation de novo. (*Brannon-Thompson, supra*, 104 Cal.App.5th at p. 466.)  "Our goal in reviewing statutory language is to determine the legislative intent of the statute.  [Citation.]  'Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning.'  [Citation.]  When the statutory language is unambiguous, its plain meaning controls."  (*Ibid.*)

**C.    *Section 1172.75***

Section 1172.75, subdivision (a) states, "[a]ny sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5 . . . is legally invalid."  When a judgment includes such an enhancement, "the court shall recall the sentence and resentence the defendant." (§ 1172.75, subd. (c).)  Section 1172.75 requires full resentencing for all defendants who qualify for recall of sentence under the statute.  (*People v. Rogers* (2025) 108 Cal.App.5th 340, 361.)  The court may "revisit all prior sentencing decisions" (*People v. Valenzuela* (2019) 7 Cal.5th 415, 424–425) and "'"has jurisdiction to modify *every* aspect of the sentence, and not just the portion subjected to the recall."'"  (*Rogers*, at p. 358.)

Section 1172.75, subdivision (d)(1) directs that resentencing "shall result in a lesser sentence than the one originally imposed

8

as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety" and "shall not result in a longer sentence than the one originally imposed."  The statute requires the court to apply "changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing" (*id.*, subd. (d)(2)) and provides that the court "may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice" (*id.*, subd. (d)(3)).

Finally, "[*u*]*nless the court originally imposed the upper term*, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  (§ 1172.75, subd. (d)(4), italics added.)

**D.**    *Section 1170*

As originally enacted, section 1170, subdivision (b) provided that, when a statute specified three possible prison terms, the court was to impose the middle term unless circumstances in aggravation or mitigation justified a different term.  "'Under that scheme the trial court, not the jury, determined the facts bearing

9

on aggravation or mitigation employing the lower [preponderance of the evidence] standard of proof.'" (*People v. Dozier* (2025) 116 Cal.App.5th 700, review granted Feb. 11, 2026, S294597 (*Dozier*).)

In 2007, *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*) held California's determinate sentencing law violated a defendant's Sixth Amendment right to a jury trial by giving the trial judge, rather than the jury, "authority to find the facts that expose a defendant to an elevated 'upper term' sentence." (*Cunningham*, at p. 274.) *Cunningham* suggested the problem could be remedied by either (1) having the jury "find any fact necessary to the imposition of an elevated sentence" or (2) by "permit[ting] judges genuinely 'to exercise broad discretion . . . within a statutory range.'" (*Id.* at p. 294.)

In response to *Cunningham*, the Legislature followed the second of the two approaches, amending section 1170, subdivision (b) to "eliminate the middle term presumption and instead give the trial court authority to select among any of the three terms as a matter of discretion and without any judicial factfinding." (*People v. Lynch* (2024) 16 Cal.5th 730, 759 (*Lynch*).)

In 2022, the Legislature amended section 1170, subdivision (b) to reflect the first of the two *Cunningham* approaches. (*Lynch, supra*, 16 Cal.5th at p. 748.) Thus, under the current version of section 1170, subdivision (b), when a statute specifies three possible terms, the middle term is the presumptive sentence and the trial court may "'impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of' an upper term sentence, and 'the facts underlying those circumstances have been stipulated to by the defendant or have been found true

10

beyond a reasonable doubt at trial by the jury or by the judge in a court trial.'" (*Lynch*, at p. 748.) This change "safeguard[s] the Sixth Amendment jury trial guarantee" by requiring that "'any fact that *exposes* a defendant to a greater *potential* sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence.'" (*Lynch,* at p. 760, quoting *Cunningham, supra*, 549 U.S. at p. 281.)

Section 1170, subdivision (b)(3) allows the court to use "defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." Subdivision (b)(5) states, "The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law." (§ 1170, subd. (b)(5).)

### E. *Analysis*

We find the court did not improperly use the same convictions to both enhance defendant's sentence and impose the upper term. Here, defendant's three serious felony enhancements were imposed for the following convictions: (1) robbery in case No. NA003240, (2) robbery in case No. NA014748, and (3) criminal threats in case No. NA036960. In addition to these convictions used to enhance defendant's sentence, defendant had a lengthy criminal record, which began as a juvenile. Specifically, defendant sustained a 1987 conviction for commercial burglary and possession of a controlled substance, a 1988 conviction for grand theft and grand theft auto, a second robbery conviction in 1993, and a domestic violence conviction in 1999. Thus, defendant's record contains many more convictions beyond the three used to enhance his sentence, and the trial

11

court could properly rely on these additional convictions as an aggravating factor under section 1170, subdivision (b)(3).

However, even assuming the trial court erred in its reliance on defendant's criminal record to reimpose the upper term, any such error was harmless beyond a reasonable doubt (*Chapman v. California* (1967) 386 U.S. 18, 24) because, as we explain, the plain language of section 1172.75, subdivision (d)(4) independently authorized the trial court to reimpose the upper term without the heightened factfinding requirements of section 1170, subdivision (b).

We note, defendant's original upper term sentence was the result of a negotiated disposition, not the exercise of judicial factfinding or discretion. As mentioned, Courts of Appeal disagree about whether a defendant whose upper term was imposed pursuant to a plea agreement is entitled to retroactive application of the heightened factfinding requirements of amended section 1170, subdivision (b). (Compare *People v. Mitchell, supra*, 83 Cal.App.5th 1051, review granted [defendant whose sentence is the result of a plea agreement is not entitled to retroactive relief under amended § 1170] & *People v. Todd, supra*, 88 Cal.App.5th 373 [where an upper term sentence was the result of a plea agreement defendant is still entitled to retroactive relief under § 1170, subd. (b)].) The issue is currently pending before our Supreme Court. While we find the holding in *Mitchell* more persuasive on the point, we need not resolve this question because, as noted, we find the plain language of section 1172.75, subdivision (d)(4) provides an independent basis to affirm reimposition of defendant's upper term sentence.

Section 1172.75, subdivision (d)(4) instructs, upon resentencing, a "court may not impose a sentence exceeding the

middle term" without heightened factfinding requirements, "[*u*]*nless the court originally imposed the upper term.*" (Italics added.) Courts of Appeal currently disagree about how to properly interpret the meaning of this provision, and the issue is presently pending before the California Supreme Court.[4]

In *Brannon-Thompson*, the court interpreted section 1172.75, subdivision (d)(4) by looking at the plain language. In so doing, *Brannon-Thompson* found, in cases where a defendant was originally sentenced to an upper term, the resentencing court may reimpose the upper term even if aggravating factors were not found true beyond a reasonable doubt. (*Brannon-Thompson, supra*, 104 Cal.App.5th at p. 458.) The court found, although section 1172.75, subdivision (d)(2) generally requires the resentencing court to apply any ameliorative changes in the law during a section 1172.75 resentencing, subdivision (d)(4) "carves out an exception to the general rule" and "does not require aggravating factors to be found true beyond a reasonable doubt if the upper term was previously imposed." (*Brannon-Thompson*, at p. 458.) Thus, *Brannon-Thompson* concluded the "plain meaning" of the statute makes it "evident the Legislature intended the new burden of proof amendments to section 1170,

---

[4] The Supreme Court granted review in *People v. Eaton* (Mar. 14, 2025, C096853) (nonpub. opn.), review granted May 14, 2025, S289903, to resolve the following question: "May a trial court reimpose a previously imposed upper term sentence under Penal Code section 1172.75, subdivision (d)(4) where the facts underlying one or more aggravating circumstances were neither stipulated to by the defendant nor found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial (cf. Pen. Code, § 1170, subd.[ ](b)(2); *id.*, § 1172.75, subd. (d)(2))?"

subdivision (b) apply only if the trial court is imposing the upper term for the first time at a section 1172.75 resentencing." (*Brannon-Thompson*, at p. 467; *id.* at pp. 466–467.)

Defendant contends *Brannon-Thompson* was wrongly decided and urges us to follow *Gonzalez*. In *Gonzalez*, the court "acknowledge[d] that the plain language of section 1172.75, subdivision (d)(4), on its face, could be interpreted as not requiring proof of aggravating factors before reimposing an upper term sentence." (*Gonzalez, supra*, 107 Cal.App.5th at pp. 328–329.) However, the *Gonzalez* court was concerned that "reading an exemption into section 1172.75, subdivision (d)(4) . . . and thereby allowing a court to resentence a defendant to an upper term sentence without proof beyond a reasonable doubt of aggravating factors, would run afoul of the Sixth Amendment implications identified in *Lynch*[*, supra,* 16 Cal.5th at p. 768]." (*Id.* at p. 330.) We find no such impediment especially where the original sentencing court did not engage in any factfinding when imposing the upper term.

When evaluating the two approaches taken in *Brannon-Thompson* and *Gonzalez*, the court in *People v. Mathis* (2025) 111 Cal.App.5th 359, review granted August 13, 2025, S291628 (*Mathis*) agreed with *Brannon-Thompson*'s conclusion and further concluded the approach did not implicate the Sixth Amendment as *Gonzalez* found. (*Mathis*, at pp. 373–374.) The *Mathis* court reasoned, when a defendant was originally sentenced to an upper term prior to 2022 the statutory scheme "did not run afoul of the Sixth Amendment" because it authorized the imposition of upper term sentences without any additional factfinding. (*Id.* at p. 373.) As a result, where "the trial court elects to retain an upper term sentence that complied with the

14

Sixth Amendment when originally imposed, the court need not engage in any additional factfinding under section 1172.75, subdivision (d)(4)." (*Id.* at pp. 373–374.) Thus, according to *Mathis,* only "for defendants who did not receive an upper term in their original sentencing, to ensure that any newly imposed upper term sentence is consistent with the Sixth Amendment, [did] the Legislature mandate[] that any such aggravating fact be found pursuant to the heightened factfinding requirements specified in *Cunningham.*"[5] (*Mathis*, at p. 373.) We find *Mathis* persuasive on the point. Because defendant's upper term sentence was negotiated as part of his plea agreement, it comported with Sixth Amendment requirements set forth in *Cunningham,* and, as such, it "'encounters no Sixth Amendment shoal.'" (*Lynch, supra*, 16 Cal.5th at p. 747.)

As *Mathis* explained, although "we presume that the Legislature intends ameliorative changes in sentencing law to apply in all cases that are nonfinal, including cases which became nonfinal due to resentencing[,] . . . the Legislature is also free to 'write statutes that provide for a different or more limited form of retroactivity, or for no retroactivity at all,' and it may 'disclaim

---

[5] We note the court in *Dozier* went a step further, finding the Sixth Amendment was not implicated for defendants sentenced before section 1170 was amended in 2007 as a result of *Cunningham*. Specifically, the court reasoned the Legislature is presumed to have been aware of and intended "that, under section 1172.75, subdivision (d)(4), some defendants previously sentenced to an upper term based on judicial factfinding could be resentenced to an upper term without any new heightened factfinding[ and found t]he Legislature was entitled to make that choice in enacting this ameliorative legislation." (*Dozier, supra*, 116 Cal.App.5th at p. 715, review granted.)

15

the application of a new ameliorative law to proceedings that occur after a defendant's conviction or sentence has been vacated.' [Citations.] Section 1172.75, subdivision (d)(4), does exactly that. It expresses the Legislature's intent that the new, heightened factfinding requirements for aggravating factors do not apply where the defendant was originally, lawfully sentenced to an upper term." (*Mathis, supra*, 111 Cal.App.5th at p. 374, review granted.) Here, as discussed, defendant originally agreed to imposition of the upper term as a part of his plea agreement and, as a result, received a determinate second strike term, rather than a life term had he been a third striker. The trial court did not err in reimposing the upper term during defendant's resentencing.

## DISPOSITION

The order is affirmed.


CHAVEZ, Acting P. J.


I concur:


GILBERT, J.*

---

\*      Retired Presiding Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16

*People v. Herrera*
**B341385**
**RICHARDSON, J., Concurring.**

I agree we should affirm the trial court's order for the reasons given by the majority, including their conclusion we need not resolve the tension between *People v. Mitchell* (2022) 83 Cal.App.5th 1051, review granted December 14, 2022, S277314, and *People v. Todd* (2023) 88 Cal.App.5th 373, review granted April 26, 2023, S279154, to decide Herrera's case. I write separately because I would accordingly refrain from commenting on the relative persuasiveness of those two opinions. (See *Mateel Environmental Justice Foundation v. Edmund A. Gray Co.* (2003) 115 Cal.App.4th 8, 20, fn. 6.)


RICHARDSON, J.